J-A26014-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| TROY R. PRESTON, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DEBRA PRESTON, NOW KNOWN AS DEBRA TRUCHAN, | |
| Appellant | No. 636 WDA 2018 |

Appeal from the Decree/Order Entered April 2, 2018
In the Court of Common Pleas of Mercer County
Civil Division at No(s): 2014-2141

BEFORE: BENDER, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.: FILED JANUARY 23, 2019

Debra Preston n/k/a Debra Truchan (Wife) appeals from the April 2, 2018 decree in divorce from Troy R. Preston (Husband) and the equitable distribution order incorporated therein. Wife raises issues concerning the equitable distribution of the marital estate. After review, we affirm in part, vacate in part and remand as directed below.

The trial court set forth the following information in its Pa.R.A.P. 1925(a) opinion, filed on June 6, 2018, stating:

> This is a divorce action following a marriage that only lasted 19 months. The parties were unable to resolve their economic differences, so a series of equitable distribution hearings were held before the court appointed Master. The Family Law Master made various Findings of Fact, Conclusions of Law and set forth a Proposed Schedule of Distribution addressing both non-marital and marital property[,] which ultimately proposed distributing the marital property on a 50-50 basis. [Husband] filed 17 separately

numbered exceptions, but subsequently withdrew exception numbers 13 and 16. [Wife] filed two exceptions to the Proposed Schedule of Distribution and Findings of Fact both of them dealing with an accumulation of scrap metal and its purported value and distribution. Both parties submitted briefs in support of their exceptions, but [Wife's] attorney did not address any of [Husband's] exceptions in her brief. Furthermore, the transcript and various exhibits submitted at the equitable distribution hearing were confusing and sometimes inadequate[,] which led the Master to make Finding of Fact No. 69 noting that the "source of funds used by the parties is confusing and co-mingled and various accounts from the parties, the business and other pre-marital investments" were difficult to digest. It is also worth noting that the record developed [before] the Master was not expanded and/or supplemented by either party after they filed their exceptions.

After reviewing the record and the parties' brief[s], the trial court denied [Wife's] two exceptions with regard to the scrap metal as set forth in this [c]ourt's Memorandum Opinion on pages four through six. [Wife] does not challenge the denial of her two exceptions by the trial court as they are not listed in her Statement of Matters Complained of on Appeal.

Furthermore, the trial court granted several exceptions of the [Husband] and found certain errors with the Master's Report and assessments pertaining to marital property, non-marital property and the Proposed Schedule of Distribution. The trial court, however, accepted the Master's recommendation of a 50-50 division of the marital property (except as to Prudential account 3088), and the assessment of attorney fees against [Husband]. The trial court issued an Order and Decree of Distribution on April 2, 2018 along with a Memorandum Opinion and supporting schedules listing non-marital property, marital property and a distribution list of marital assets and credits between them with the intent of carrying out a 50-50 division of almost all of the assets. [Wife] filed a timely appeal therefrom and submitted a Statement of Matters Complained Of [on Appeal].

Trial Court Rule 1925(a) Opinion (TCO), 6/6/18, at 1-3.

In her appeal to this Court, Wife raises the following issues:

- 2 -

1.  When Husband deposited the proceeds of the sale of his pre-marital business into an investment account held jointly with Wife, did the lower court violate established law and abuse its discretion by finding only 25 percent of the account was marital property, then awarding Wife's share to Husband to enable him to pay undefined taxes for which there is no evidence of record?

2.  Without any evidence of record regarding costs of sale for Florida real estate, did the court abuse its discretion by automatically reducing the value of Husband's real estate by a percentage suggested in Husband's [b]rief on [e]xceptions to the Master's [r]eport?

3.  Through mathematical error and an illogical restoration to Husband of ill-gotten gains from financial misconduct, did the lower court abuse its discretion and disregard the Divorce Code by manufacturing two fictitious credits to cancel an award to Wife of $10,000 in legal fees and litigation costs and further[] skew[ing] the unequal division of marital property?

Wife's brief at 5.

The following principles guide our review:

> Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.

Smith v. Smith, 904 A.2d 15, 18 (Pa. Super. 2006) (quoting McCoy v. McCoy, 888 A.2d 906, 908 (Pa. Super. 2005)).  As we previously observed, in the context of an equitable distribution of marital property, a trial court has the authority to divide the award as the equities presented in the particular case may require. Mercatell [v. Mercatell], 854 A.2d [609,] 611 [(Pa. Super. 2004)].  "In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights."  Morgante v.

> Morgante, 119 A.3d 382, 387 (Pa. Super. 2015) (quoting Biese v. Biese, 979 A.2d 892, 895 (Pa. Super. 2009)). "[A] master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." Moran v. Moran, 839 A.2d 1091, 1095 (Pa. Super. 2003).

Cook v. Cook, 186 A.3d 1015, 1025-26 (Pa. Super. 2018).

We begin this Court's review of Wife's issues on appeal by centering on her third issue. In Husband's brief, he acknowledges that he still owes Wife $3,500.00 toward her counsel fees. Additionally, he recognizes that pursuant to the trial court's distribution of the Prudential account, he was awarded $4,085.62 more than Wife. Therefore, he suggests that he owes Wife $2,042.81, which is half of the $4,085.62 amount, in addition to the $3,500.00 still owing on the counsel fees award. Thus, the total amount due from Husband to Wife is $5,542.81. After reviewing the record, we must agree with Husband's statement of the trial court's calculation error and, therefore, we vacate the trial court's order to that extent and remand to allow the trial court to make this correction.

With regard to Wife's first two issues, we have reviewed the certified record, the briefs of the parties, the relevant law, and the analysis provided by the Honorable Christopher J. St. John, Senior Judge of the Court of Common Pleas of Mercer County in his Rule 1925(a) opinion, dated June 6, 2018. On pages 4 through 7 of that opinion, Judge St. John correctly disposes of Wife's issues #1 and #2 concerning the reduction in value of the Florida real estate by the costs of sale and the distribution of the Prudential account.

Therefore, we adopt that portion of Judge St. John's opinion as our own and affirm that portion of the court's order on that basis.

Decree/Order affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/23/2019

FILED IN MERCER
COUNTY

2018 JUN -6 AM 9: 19

RUTH A. DICE
PROTHONOTARY

IN THE COURT OF COMMON PLEAS OF MERCER COUNTY, PENNSYLVANIA
CIVIL ACTION -- LAW

TROY R. PRESTON,
      Plaintiff              :

      v.                    :      No. 2014 -- 2141

DEBRA PRESTON,
      Defendant     :

## RULE 1925 OPINION

This is a divorce action following a marriage that only lasted 19 months. The parties were unable to resolve their economic differences, so a series of equitable distribution hearings were held before the court appointed Master. The Family Law Master made various Findings of Fact, Conclusions of Law and set forth a Proposed Schedule of Distribution addressing both non-marital and marital property which ultimately proposed distributing the marital property on a 50-50 basis. Appellee husband filed 17 separately numbered exceptions, but subsequently withdrew exception numbers 13 and 16. Appellant wife filed two exceptions to the Proposed Schedule of Distribution and Findings of Fact both of them dealing with an accumulation of scrap metal and its purported value and distribution. Both parties submitted briefs in support of their exceptions, but Appellant wife's attorney did not

address any of the Appellee husband's exceptions in her brief. Furthermore, the transcript and various exhibits submitted at the equitable distribution hearing were confusing and sometimes inadequate which led the Master to make Finding of Fact No. 69 noting that the "source of funds used by the parties is confusing and co-mingled and various accounts from the parties, the business and other pre-marital investments" were difficult to digest. It is also worth noting that the record developed at the Master was not expanded and/or supplemented by either party after they filed their exceptions.

After reviewing the record and the parties' brief, the trial court denied Appellant wife's two exceptions with regard to the scrap metal as set forth in this Court's Memorandum Opinion on pages four through six. Appellant wife does not challenge the denial of her two exceptions by the trial court as they are not listed in her Statement of Matters Complained of on Appeal.

Furthermore, the trial court granted several exceptions of the Appellee husband and found certain errors with the Master's Report and assessments pertaining to marital property, non-marital property and the Proposed Schedule of Distribution. The trial court, however, accepted the Master's recommendation of a 50-50 division of the marital property (except as to Prudential account 3088), and the assessment of attorney fees against Appellee husband. The trial court issued an Order and Decree of Distribution on April 2, 2018 along with a Memorandum Opinion and supporting schedules listing non-marital property, marital property and a distribution list of marital assets and credits between them with the intent of carrying out a 50-50 division of almost all of the assets. Appellant wife filed a timely

2

appeal therefrom and submitted a Statement of Matters Complained Of listing the following issues:

1.    The trial court abused its discretion by:

(a)    automatically reducing the marital value of the Florida real estate for costs of sale) and;

(b)    determining the reduced value by applying a percentage of costs of sale suggested in plaintiff's brief on exceptions without any evidence of record or support in the law.   (Order and Opinion of April 2, 2018, p. 9-11)

2.    The trial court erred in finding:

(a)    the parties' joint Prudential account was not entirely marital property;

(b)    crediting Wife's $10,487.30 share to Husband; and

(c)    awarding Husband a greater share of the marital account to pay undefined taxes on his pre-marital business in an amount for which there is no evidence of record.   (Order and Opinion of April 2, 2018, p. 13-17).

3.    The trial court's equal division of marital assets totaling $130,924.80 is inconsistent with the Schedule of Distribution which awards assets in the amount of $67,505.21 (51.56 per cent of the total marital estate) to Husband and $63,419.59 (48.44 per cent of the total marital estate) to Wife.   (Order and Opinion of April 2, 2018, Schedule C, p. 24).

4.    After finding Wife to be entitled to $10,000 in counsel fees and costs per the Master's recommendation (Order and Opinion of April 2, 2018, p. 3-4), the trial court erroneously ordered Wife to pay $4,085.62 to Husband to equalize the 50/50 distribution when, in fact, Wife's distribution was already $4,085.62 less than the distribution to Husband.   (Order and Decree of Distribution of April 2, 2018, paragraphs 2 and 7).

5.    The trial court erred in awarding Husband a credit of $6,500 for money Husband had voluntarily paid to Wife in reimbursement for his financial misconduct at separation.   (Order and Decree of Distribution of April 2, 2018, paragraph 7).

3

1.    Whether the trial court abused its discretion by:

(a)    automatically reducing the marital value of the Florida real estate for costs of sale) and;

(b)    determining the reduced value by applying a percentage of costs of sale suggested in plaintiff's brief on exceptions without any evidence of record or support in the law. (Order and Opinion of April 2, 2018, p. 9-11)

Appellant wife takes issue with the trial court's reduction of the marital value of husband's Florida property.    Both parties came into the marriage owning pre-marital real estate.    Various appraisals were placed into the record in an attempt to establish the values on the date of marriage and the date of separation. None of those appraisals, nor any other record evidence, established the cost of sale which the Court is required to consider pursuant to 23 Pa. C.S. § 3502(10.2). Appellant correctly points out the record is devoid of what the cost of sales for a Florida lot would be.

Nonetheless, this Court addressed the cost of sale including commissions and transfer taxes of 8.5% of the sale price in order to determine the true equity of the property and whether either party's non-marital real estate property would then have increased in value during this 19 month marriage.   The trial court discussed this issue on both the Florida property and Appellant's farm in Mercer County, Pennsylvania in discussing Plaintiff's exception numbers 5 and 6 found on pages 8 through 11 of the Memorandum Opinion.   Thus, in effect, the trial court took judicial notice of the routine transfer taxes that are published every year, and real estate commissions in Mercer County commonly assessed, and applied it to both properties and determined that there was no increase in value of either party's non-marital real estate during the marriage.   Accordingly, this Court suggests that

4

the issues raised in Item 1(a) and (b) be denied and that the Court's finding on these issues be affirmed.

2.   **Whether the trial court erred in finding:**

(a)   **the parties' joint Prudential account was not entirely marital property;**

(b)   **crediting Wife's $10,487.30 share to Husband; and**

(c)   **awarding Husband a greater share of the marital account to pay undefined taxes on his pre-marital business in an amount for which there is no evidence of record.   (Order and Opinion of April 2, 2018, p. 13-17).**

Appellee husband owned and operated a business known as Preston America that was 100% pre-marital.  Appellee husband then sold the inventory of the company at auction netting $31,903.61 to Appellee husband which the Master and the trial court both determined were not marital property.  *See* Master Finding of Fact No. 66.  Notably, Appellant wife does not challenge this finding.

Then the parties opened a joint account with Prudential and the remaining balance of the auction proceeds were deposited into this joint account during the marriage and the Master and the trial court properly found that constitute a gift to the marriage and was therefore marital property.  Part of the dispute arises as to the increase in value of this account after the initial deposit which was from 100% pre-marital assets and whether the entire account should be distributed between the parties 50-50 or at a different ratio because it was entirely from Appellee's pre-marital asset (Preston America).  Appellee husband testified that the reason the proceeds were placed into a joint account was so that Appellant would have cash reserves to pay the anticipated tax consequences of the sale of the business

5

because of his bad health. *See* Findings of Facts 41-46. Unfortunately, the record was not developed as to what those tax consequences would be.

In issue 2(a) Appellant wife claims that the trial court found the joint Prudential account was not entirely marital property. However, this misconstrues the trial court's explanation as set forth in the discussion of Appellee's Exception No. 10 found on pages 13 through 17 of the Memorandum Opinion. In addition, on Schedule "A" attached to the Memorandum Opinion, the Court listed in No. 9 the auction proceeds of Preston America as being non-marital which merely applied to those funds that were not deposited into the joint Prudential account. Furthermore, on Schedule "B" attached to the Memorandum Opinion the Court in No. 18 identified the entire Prudential joint account as a marital asset. Thus, issue 2(a) has no merit.

Issue 2(c) refers to this Prudential account as a marital account but takes issue with the trial court not dividing the entire account on a 50-50 basis. The trial court noted in the Memorandum Opinion that 23 Pa. C.S.A. § 3502(a)(7) directs the Court to consider the source of the contribution to the Prudential fund as between the parties in order to effectuate economic justice. That is what the trial court did in this instance particularly because there were anticipated tax consequences for the sale of Preston America and all of the Prudential account came from the auction of Appellee's long-time pre-marital business. None of the money in the Prudential account came from Appellant wife. Accordingly, in order to carry out its duty of economic justice, the trial court deemed that Appellant wife should only be entitled to claim a 25% interest in the net proceeds of the auction that eventually were deposited into the Prudential account number 3088, but that she should be entitled

6

to a 50-50 share of the increase in value of that account. Thus, the Court submits that it was just and proper in light of all of the circumstances surrounding the various assets in this entire short-term marriage that Appellee husband should be entitled to keep a greater share of the proceeds from the sale of his long-time business. Accordingly, the Court suggests that issue 2(c) be overruled and that the trial court be affirmed on exercising its discretion in its finding of less than a 50% share to Appellant wife on the Prudential account in question. Notably, all other marital assets were divided 50-50.

The final issue as to the joint Prudential account is that Appellant claims that the Court erred in allowing Appellee husband to keep the entire balance in the Prudential joint account including Appellant wife's share of $10,478.30 in the Schedule of Distribution. Trial courts, however, are given broad discretion in terms of distributing the remaining assets out of a divorce to the parties in any feasible way. Thus, the trial court did not abuse its discretion in crediting husband with wife's share of this Prudential account in the greater scheme of all of the assets just like the trial court permitted the wife to keep all of the scrap metal instead of dividing it up between the parties. Moreover, the distribution of her share of this asset reduced the amount she would owe Appellee because there were insufficient assets available to divide equally between them.

> **3.      Whether the trial court's equal division of marital assets totaling $130,924.80 is inconsistent with the Schedule of Distribution which awards assets in the amount of $67,505.21 (51.56 per cent of the total marital estate) to Husband and $63,419.59 (48.44 per cent of the total marital estate) to Wife. (Order and Opinion of April 2, 2018, Schedule C, p. 24).**

7

Appellant wife argues that Schedule "C", Distribution of Marital Assets and Credit, on page 24 of the Memorandum Opinion does not constitute a 50-50 division between the parties. Obviously the difference in the total between the parties of assets distributed to each of them shows on its face that Appellant wife appears to be shorted by the amount of $4,085.62.

However, Schedule "C" is merely a list of those assets to be distributed to each party where there are assets, including cash, that are great enough to make a 50-50 distribution from the marital assets and credits alone, without either party having to come up with additional cash to equalize a 50-50 split. Accordingly, Schedule "C" simply indicates that there were insufficient assets and/or credits that the Court could use on Schedule "C" for the 50-50 division.

The Court recognized this problem and explained on page 3 of the Order and Decree that the "Court recognizes that the distribution requires wife to pay $4,085.62 ($67,505.21 – 63,419.59) to husband to equalize distribution, in as much as wife has been attributed the value of husband's scrap metal which she has admitted, or by implication, has liquidated in whole or in part, probably for less than fair market value." The trial court went on to explain in the next sentence that since wife would have to come up with cash, and the Court was aware that she claimed to be short on cash, that the Court went on to provide that husband, "however, shall receive a credit of $4,085.62 against the amount of attorney fees owed by Plaintiff [Appellee] pursuant to this Decree." Once again, the trial court believes that a 50-50 division has been made once the entire Decree is reviewed closely and that no error has been committed. Therefore, issue number 3 should be overruled.

8

4.      Whether, after finding Wife to be entitled to $10,000 in counsel fees and costs per the Master's recommendation (Order and Opinion of April 2, 2018, p. 3-4), the trial court erroneously ordered Wife to pay $4,085.62 to Husband to equalize the 50/50 distribution when, in fact, Wife's distribution was already $4,085.62 less than the distribution to Husband. (Order and Decree of Distribution of April 2, 2018, paragraphs 2 and 7).

This issue deals with attorney fees that the Master and the trial court agreed should be paid by Appellee husband to Appellant wife in the amount of $10,000.00. Appellant does not challenge the amount on appeal of the attorney fees award, but asserts that the Appellee husband in the Decree should not have received a credit towards attorney fees in the amount of $4,085.62 which is the amount of cash Appellant wife owed to him to equalize the 50-50 distribution which Appellant recognizes was needed to equalize the 50-50 distribution despite her contention in issue 3 above.

Since this issue is premised on the argument in number 3 above that she was shorted by $4,085.62 in the distribution of assets, this issue must similarly fail since it is based on that false premise. So in effect, the Court simply relieved her from having to pay Appellee husband the cash she needed to equalize a 50-50 distribution of assets by offsetting that debt to Appellee husband with the separate amount he owed for her attorney fees. Thus, this issue should likewise be overruled.

5.      Whether the trial court erred in awarding Husband a credit of $6,500 for money Husband had voluntarily paid to Wife in reimbursement for his financial misconduct at separation. (Order and Decree of Distribution of April 2, 2018, paragraph 7).

9

In this issue, Appellant wife challenges the credit of $6,500.00 the trial court gave to Appellee husband towards the attorney fees he owed her. Appellant seemingly admits that she received this money from Appellee but argues that he should not receive a credit for this payment because it was "voluntarily paid to wife in reimbursement for his financial misconduct at separation." In support of this proposition she cites the Order and Decree dated April 2, 2018 at paragraph 7 which provides in its entirety as follows:

> "[Appellee] shall pay attorney fees to wife in the amount of $10,000.00 but shall receive a credit from equitable distribution for $4,085.62, as well as a credit of $6,500.00 previously paid to wife by husband. Thus, [Appellee] has satisfied the obligations regarding attorney fees. The overpayment by [Appellee] of $585.62, however, shall be waived because of [Appellee's] inferior financial condition."

Nowhere in paragraph 7 is there any mention of financial misconduct at separation by Appellee husband or that he paid it voluntarily to her. This Court is unaware of the source of this averment. Furthermore, the Master made Finding of Fact No. 54 with regard to this payment and similarly does not mention any financial misconduct since the Master found that Appellee "paid wife the sum of $6,500.00 on December 13, 2014 on account and toward an ultimate settlement of marital property." The Master further noted in Paragraph C of Schedule C that Appellant already received a credit toward distribution of marital assets of $6,500.00. The Master also made a recommendation as set forth in Paragraph 3 of the proposed Order and Decree attached to the Master's Report that Appellee husband receive a credit for $6,500.00. Appellant wife took no exception with regard to this finding and/or its application. Accordingly, the issue has been waived.

10

Even if it has not been raised, it is without merit and should be overruled because Appellee is entitled to that credit and the only way he could receive it was by offsetting it against his share of Appellant's attorney fees.

In conclusion, this Court suggests that all of the issues raised by Appellant wife are either without merit or in the case of issue number 5 was waived and that the lower court's Order and Decree and Findings should be affirmed.

BY THE COURT·

Date:   June 6, 2018                                     _____ S.J.
                                              Christopher J. St. John, Senior Judge

rmb

6/6/18
cc: atty olsm
    atty ochs

11